and number 14-4465 Mr. Levine and Mr. Brandman Good morning, your honors. My name is Richard A. Levine. I'm here representing the appellants Kelly and Renee Chabot. This case presents a very narrow issue for the court. The court must decide whether a person who timely claims a Fifth Amendment privilege can nevertheless be compelled to give testimony that could convict them of the crime of willfully failing to file an information form with the United The problem you have is a pretty steep hill to climb. You've got the 2nd, the 4th, the 5th, the 7th, the 9th, and the 11th circuits having gone the other way. And essentially they're looking at whether, or at least some of them are looking at whether you have a criminal statute or a regulatory statute. And this appears to be a regulatory statute. And if so, you can be called on to produce documents. I think the problem with the way these courts have addressed the issue is they've focused on the fact that it's not a crime to have a foreign account, an offshore account, and therefore it's not against the constitutional requirements to require someone to file an annual report. Recall that the annual report only needs to be filed by someone who has either a beneficial interest or signatory authority on an account. And if during the prior calendar year the account exceeded $10,000, this is an offshore account. It could be a bank account. It could be a brokerage account. It could be some other kind of financial account. I'm sorry to interrupt myself, but I forgot to mention that I'm serving three minutes. That's fine. Well, thanks. And it doesn't in the six circuits that's already ruled on this. Sorry, I didn't talk to you. Okay, go ahead. Because they've focused on the requirement to file an F-bar. That's not the issue. We're not claiming there's anything improper about requiring to file an F-bar or making it a criminal offense. The problem is that you shouldn't require any person, these appellates, to admit that they should have filed an F-bar. The government knows they didn't file the F-bar. Well, just a second. They're not asking them to admit that they did this willfully or they should have filed. They're just saying, let's have the information. They're not asking them to admit to any kind of mens rea. Oh, no, they're not asking to admit to mens rea. So what did you mean by they were asking them to say they should have filed? Well, because the predicates for filing are factual issues. Do you have a signatory authority or a beneficial interest in an offshore account? Do the account have more than $10,000 during the year? Those two factual predicates must be proved by the government in addition to mens rea. Now, they can go out and get that information any which way they want, but they shouldn't be able to get that information and compel an individual to provide that information. The problem here is that you have two companion regulations. You have a regulation that says you must file this annual report. Again, if you have the account and you're a beneficial owner or a signatory authority and it has more than $10,000, and at the same time, they say, and you must keep a record of that same information that's required to go into that form and give it to us when we ask you for it. We're not talking about whether the crime, whether there's anything improper about filing the form. It's requiring them to come forward and say, oh, yes, I had this account. I had signatory authority or a beneficial interest. Oh, yes, it did have more than $10,000. Yes, I'm telling you that. That's an admission. Yeah, but didn't Bookright, the Supreme Court put that to sleep with the Booknight decision? I think Booknight actually helps our case, Your Honor. How so? How? How so? Because there, the court was focusing on weighing in. We have two competing principles here. We have the Fisher of the United States principle of testimonial equivalent of producing records versus the opinion of required records that was decided 28 years before Fisher. Now, if Fisher has any significance at all, you have to weigh and balance these two competing Supreme Court doctrines. And in Booknight, what the court was saying is that testimonial implications of producing the child is kind of thin. Yes, there's some possibility of testimonial implications, but the compelling interest of protecting the interest of the child is more important. Yeah, but once you assume, according to Bookright, custodial duties, your act of production defense seems to be rather thin to me, doesn't it? Well, again, it's comparing, weighing and balancing the two principles. Oh, you think we should weigh the principles of the Fifth Amendment vis-a-vis the requirement of the government to have custodial people produce these documents? I think if you do that, you have to come out in favor of the Fifth Amendment. There's no question. That's more important than Congress deciding whether or not you have a Fifth Amendment information that has to be retained is exactly what has to be put on the FBAR form. No different. And you only have to retain that information if you are required to file a form, which is only if the account has a value of more than $10,000. So by requiring you in advance to keep this information and produce it on demand, it's the same exact thing as producing a record of your illegal firearm. You had an FBAR account. In this case, you didn't file the FBAR form. Well, our research reflects that your defense, somewhat similar, was rejected by the 2nd, 7th, and 11th Circuit, this act of production defense. Well I think if one analyzes the facts here in form, this is act of production. In substance, it's testimony. Because imagine, if you will, for a moment, that there was no requirement to keep this information that should be on the FBAR form. Imagine for a moment. And now the government comes and says, I want the information that should have been filed on the FBAR form, because I want to be able to prosecute you for failure to file it. You would say, Fifth Amendment. So by the simple expedient of saying in advance, in a companion regulation, when they adopted the requirement to file the FBAR, keep a record of this information and produce it on demand, they were taking away your Fifth Amendment papers. That's the danger. How do you answer the government's allegation that you fail to identify any authority applying the balancing test, which you feel we should do? I think if the court directs its attention not to the 6th Courts of Appeals that rule in favor of the government on this issue, and direct your attention to the Supreme Court opinions, and I specifically refer you to the opinion of the court in Marchetti. And look at 390 U.S. at pages 56 and 57, where the court says, if you don't mind, I'm going to read this, because I think it's directly relevant to this case. What page? And the court was here talking about the so-called required records exception. And this is the same court that was basically commenting on the fact that it's unconstitutional to require the filing of a gambling report. There's obviously a regulatory impact of that because the government could collect taxes. But that was overwhelmed by the admissions in the event of that. Isn't this a question of, what you have here, possible tax liability? It's theoretically possible, but that's a lie. Well, you said in Marchetti if it was just tax liability, it might be okay. No, I didn't say that. I said the court found that there was also some relevance to the fact that the government could collect taxes, but that didn't overwhelm the Fifth Amendment privilege. And the court was saying in describing and looking at the... But those are inherently illegal activities, right? Whereas this is, having a foreign bank account is not an inherently illegal activity. What's inherently criminal is failing to file the FBAR. That's the issue. You know, it just seems to me that we all understand that ordinarily this would fit into the Fifth Amendment. But there's this exception. And the Supreme Court has created this exception. So if we keep going back to whether this violates the Fifth Amendment as the first step, we don't get very far. Because we know that production can be speech and it can be protected. Because we have an exception here. Right, well the exception in this case... The question is why the exception doesn't cover you. And it just seems to me this fits right within the exception. Because the exception overwhelms the rule. There's no more Fifth Amendment privilege with respect to documents. If the government simply can say, show me this information when we ask you for it. Well, if they're documents about your gambling business or your drug business, it's different. That's not the same. Those are inherently criminal activities. Or if it's a document with regard to failing to file an FBAR, it's exactly the same thing. You know, you're focusing on the fact that it's... I think you've wiped out the required records exception. What falls into the required records exception in your view? Well, take for example, the used car dealer who was held that he had to turn over certain records regarding odometers that was required to keep. Now, there was no charge there of failure to file an odometer report. If you had to file an odometer report and he didn't file it, and there was something about what was in that report that he had to come forward and admit, there would be a comparability. But that wasn't the case. In that case, he would say, well, you know, that might lead to incriminating evidence. And the court said, well, look, this is part of the regulations with regard to being a used car dealer. And so keeping an odometer report is not admission of any particular crime. It might lead to something. Here, the evidence of what's being required to be disclosed is exactly the information that should be on the FBAR. As soon as you disclose that, you handle all the elements of the crime, except menstruation. It's the same thing with the odometer report, isn't it? No. The odometer report might lead to something because we don't know what they were charging. Well, and theoretically, this might lead to something. This doesn't, well, it might lead because it's regulatory. I mean, look, we all know that you, I mean, you've got an ally in former Judge Friendly. I mean, you know, who said that the question of how a person can be ordered consistently with the language of self-incrimination clause to produce his own records under certain circumstances when he cannot be required to testify remains unanswerable. There's a real tension. They don't have to testify, but they do have to produce. And yet there is this exception. It is created by the Supreme Court. And six circuits have followed what they perceive to be that exception to the Fifth Amendment. Exclusionary rule. Well, and whether you like it or not, and you have some good theoretical arguments, it doesn't appear that there's any case on your side. It's when you're dealing with a matter that pertains to a regulation, in effect, a regulatory activity. What you're telling us is if they produce the information that comes from the regulatory mandate, they are going to be incriminating themselves. My time is up. Go ahead. You're on our time. There are thousands of foreign bank accounts. And so what is necessarily incriminating about someone admitting they have a foreign bank account and having to produce the documents under the statute? Well, This is something commonly for people that have high finance do all the time. Even low finance, Your Honor. People living and working abroad could have foreign accounts. What is inherently criminal about it? Nothing. Then why the act of production? Why should it have a Fifth Amendment tinge to it? Because the issue here is failing to file the F-bar, which is a criminal offense. Failing to file the F-bar when required. It's only required if you have an account that has a value of more than $10,000. Imagine, if you will, that someone has opened an account in Canada where they have a summer home. And they keep a convenience account in Canada. And they have $4,000 or $5,000 in the account. You don't have to keep any records of anything. You don't have to file anything. But suddenly, one year, they have an account and it goes over $10,000. Suddenly, you become part of a regulatory scheme, question mark. Now you have to file an F-bar. If you will, you need to file an F-bar. Maybe you're trying to conceal something. Maybe not. But if you will, you have to file an F-bar. You've committed a crime. And now the government says to you, oh, you must have kept a record of that account for that year. Because the account, you didn't have to keep a record before it went over $10,000. Only if it goes over $10,000. As soon as you've done that, you've got to keep a record. And you've got to get it to us when we ask you for it. That's the production that offends the Fifth Amendment. It's more testimony than real record production. It's direct testimony. Thank you. We'll get Mr. Brandman to get you back on the phone. I've got three minutes coming back. Yes, sir. May it please the Court, Robert Brandman for the United States. After listening to the previous argument, I'm confident the Court understands our position. I have a question for you. This three-part test, and I guess you have to fulfill all three parts to have this fall within the required records exception. I didn't exactly understand the public aspects of this. Maybe you want to tell me what the public aspects are. Yes, certainly. Public aspects, I think of it as the first question, is the basic activity that's being regulated, one that Congress can constitutionally regulate or forbid. That phrase, regulate or forbid, comes out of Shapiro. Shapiro used the term public aspects, and the Second Circuit's opinion opined that they was still the law, which placed importance on whether a document had public aspects or private aspects. Boyd's not followed so much anymore, so that term is probably not the best name for that prong. I would say the public aspects step is just determining whether the activity is one that Congress can regulate or forbid. Foreign banking is plainly something that can regulate or forbid under the Commerce Clause. The Supreme Court even said as much in California Bankers versus Schultz, the first big, wide challenge to the basics. Congress has the power to forbid U.S. citizens or U.S. residents or whoever from banking in foreign lands. Yes. I think the phrase in California Bankers actually said, with regard to negotiable instruments, it was a channel of commerce that Congress could close if it thought a drastic solution were warranted. But there's really no dispute that Congress could regulate or forbid international foreign commerce. So that's your idea of, you don't want to call this the public aspects prong? What do you want to call it? I haven't come up with another name. Let's just stick with public aspects. So it just sounds to me like this doesn't exist, this prong. Because if this is an area that Congress can regulate, then it can require documents. And this whole record exception is about required documents for a regulatory scheme. So you're making the public aspects prong kind of go away. Well, there are not many cases where it's been sort of litigated over an area where Congress tried to regulate something that it couldn't. For my way of counterexample, I'll point to some of the Seventh Circuit cases. One's called Porter. And one's called Smith versus Reichert, where the government in one case, federal government in one case, Indiana tax authorities were trying to get an individual's basic records of what was their income, what were their deductions, expenses, and so forth. The tax system, per se, is not something people voluntarily decide, I think I'm going to be a taxpayer now. They decide, I need to put food on the table and make a living. Congress can tax that, but they can't regulate making a living the same way. So we wouldn't argue that the government can insist that you keep records of all your income and expenses and deduction items and have to turn them over without a Fifth Amendment. What's wrong with the balancing test that your friend across the aisle has suggested, and why shouldn't we flesh out the Chabot's balancing approach? Well, I think balancing is really inherent in my three steps, the second one of which is, is there a civil regulatory purpose or is it a selective, directed, destructive group of inherent leaders? That's what you say, but why couldn't the government then have a statute say you have to keep a record of any criminal activity, and then you have to produce those records? There's no difference between that and what you've done here. Well, that's where the Supreme Court drew the line in the trio of cases decided on the same day in 1968. Dealers in compromise, wagering, some other activities have come up too. Government cannot draw an ingenious regulatory scheme directed to stamp out some evil that is criminal. Well, for the balance here, it seems that the real reason the government wants this is to look for criminal activity. It's even, the government really wants this more for criminal prosecution than for any other reason. And it's administered or looked at more by the criminal side of the government than the civil side. I don't know that's the case. There's quite a lot of history about the Bank Secrecy Act from 1970 and the Supreme Court's opinion in 1972, California bankers. Maybe in response to that, you could just say, what are these regulatory purposes? What are these civil regulatory purposes? At the time, Congress was concerned that criminals were using banks to hide their criminal activity. Well, that doesn't sound very civil. It wasn't criminal banking. It was people who were stealing money some other place. I don't know. At the time, they expressed concern that people were avoiding both criminal law and regulatory law and tax law by either banking with countries that had bank secrecy rules or banking at domestic banks that were not keeping adequate records. So the two parts of that statute, the one that was largely challenged in 1972, was required domestic banks, if they were federally insured, to maintain records of certain things for a certain amount of time on microfilm. And because Congress could not require foreign banks to comply with the same rules, they required taxpayers to keep that information. I'm sorry, not taxpayers, foreign depositors. What are these public policy regulatory things that aren't criminal? You already said they were hiding money. We don't. So this is used to ban. We want to chase money laundering. But what is a purely civil purpose for these laws that is not associated with criminal activity? It has to do with monetary policy. I don't really understand. But the Fifth Circuit opinion described where else the Treasury Department sends the statistical information, Office of the Comptroller of the Currency and the National Credit Union, this and that, several other agencies that deal with monetary policy that don't have prosecuting authority and maybe even don't have personal identifiable information from the taxpayers, but compiles. Was this a tangential purpose? It's one of Congress's civil purposes for collecting this information. You send it to these places to keep, what, for statistical information, for, they might want to change the interest rates or something like that? Maybe. I don't really know. You don't know why they send this information around? That's right. I don't. How could you, with a straight face, say this is regulatory when it's administered by the Criminal Enforcement Division of the Treasury Department, known as the Financial Crimes Enforcement Network? That sounds awful criminal to me. It doesn't sound, you know. I think, I don't know. What department are you from? I'm with the Tax Division, Department of Justice, civil appellate. So you're doing civil appellate, you say? This summons was issued by a regular non-old revenue agent. I've been doing an income tax examination for four years. But this emanated out of the Criminal Enforcement Division of Treasury. No. No? The summons came from a revenue agent. Okay, so that sounds awfully like they're trying to chase someone that's not paying their taxes. Is that true? That's, most of my cases are that. All right, well why should we do a balancing test here? Because if you prevail here, this man's Fifth Amendment has gone up in smoke. This is an area over which he does not have a Fifth Amendment, because the regulatory program is designed for a valid... Well, that's what I'm saying. If you prevail, the Fifth Amendment is non-existent to him. Why should it disappear? That's what the Supreme Court has done in its cases, in buyers... Well, they didn't flesh out the balancing, though. They never fleshed out the balancing, whether this is really a regulatory or criminal proceeding. As a matter of fact, you have a five-year statute on this type of activity, whereas generally civil is only, what, three years or something like that? It's three years or six years, and I don't have time to explain what the statute of limitations is on tax adjustments. Yeah, well, it's greater here. There's an extended period over civil with this area, and this is coming out of the Criminal Enforcement Division. This summons doesn't come out... All the six other cases were all grand jury subpoenas, so there's more of a criminal element there. If you have a reason, a civil reason, for five-year statute of limitations, I think you should take the time and tell us. That's okay, Judge. Okay, well, the statute of limitations for making a tax adjustment runs from when the following year, but can be extended and extended again. It can go to six years if the IRS is alleging a substantial understatement, something like that. It can be extended by agreement. It can be extended by bankruptcy filing. It would not be at all unusual for the IRS to adjust a tax liability more than five years after the close of the tax year. It does seem... You can't call these persons to testify before a grand jury. I believe we can. You can't. And have... I'd call, but you'd take the fifth. You would take... They would take the fifth with regard to their testimony. We could ask them the same information that is required by the records, which is the same information that's asked for by the FBAR. What's unsatisfying is if they have a Fifth Amendment privilege against self-incrimination with regard to their testimony before a grand or a pedigree, why don't they have the same right with regard to the production of documents? And the answer obviously is, well, the Supreme Court has said otherwise. But the latest case, Brooknight, isn't that very unusual facts? It is unusual facts, but part of the same principles in these other cases. It wasn't even a records case, was it? It wasn't, no. It was a production case. But the distinction between whether the contents of the documents are incriminating or the act of production that's incriminating does not need to be addressed. In the recorded records doctrine case, the incriminating nature is presumed. Many of these cases came up after the claimant was convicted. This court's case in Hunt was a liquor distillery. Man was convicted for distilling liquor, not having registered in advance. And he claimed his privilege before the trial and asked this court to dismiss the indictment. But it didn't. His only violation was not registering before distilling liquor, which is a legal activity, just not without registering first. This requirement, records here in this case, is essentially a criminal purpose. The BSA itself states the reports are required for a high degree, because they have a high degree of usefulness in criminal prosecutions. Criminal and tax and civil regulatory. And Congress has added since then intelligence, counterintelligence, prevention of terrorism. But criminal is right up there, too. I think we all agree that bank records can be very important for anything that you might, for a lot of things that you might want to investigate about a person. Well, why is book not, why can't we have a balancing test here? No other circuit really has had facts quite like this, where you have a regulatory scheme, which is a trap for anyone that wants to engage in any illegal activity. We're required to keep records of any, of not paying taxes. No, no, you're required to keep records of foreign bank accounts. Oh, and if some of these accounts may be as a result of not paying taxes. Yes, but some of them are a result of just having earned money and storing it in Canada or someplace where you might want to use it. Anything further? Anything for the book? No, that's about it. Thank you very much. I'd like to address for a minute Judge Rastani's question about the three-prong test. The three-prong test as administered, if you will, by the Sixth Circuit Courts, and the way the government argues it, is really one prong. The government and the courts seem to say, well, if the government has a regulation that requires this information, therefore, A, it has some civil aspects to it. B, it's regularly kept because we require you to keep it, therefore, it's regularly kept. C, it has public aspects because we asked you to keep it, therefore, it has public aspects. So where is there a real three-prong test? I'll direct your attention again to what the Supreme Court said in Marchetti, the page I cited, 390 U.S. at 5657. That analysis blows that whole three-prong test the way it's been administered by the Circuit Courts and these Bank Secrecy Act cases out of the water. There's no real three-prong test anymore, the way they've interpreted it. Now, I'd also like to mention about the Bank Secrecy Act. The Bank Secrecy Act is primarily targeted to banks. Banks are regulated businesses and there's an enormous amount of regulation about banks. And it's all forward-looking. That sounds pretty regulatory. Say again? Sounds regulatory. With respect to banks. Here we're talking about an individual. How about the consent theory? The, I think, he seems to say there's a Supreme Court case that says Congress can forbid this foreign banking and therefore if you participate in this foreign banking, you consent to regulation. I don't see the, it's a non-sequitur to me. I've consented to something because it's forbidden? No, no, it's just that it's something that Congress could totally forbid. And instead of totally forbidding it, they regulate it. And therefore, when you participate, you consent to the regulation. So I'll ask you the rhetorical question. In my hypothetical about the person who had the... Oh yes, a rhetorical question. I don't have to answer it, right? It's a hypothetical question. To only illustrate the point, not a rhetorical question, a hypothetical question. Because there's no regulation of having a foreign bank account until and unless that account exceeds $10,000. So when I opened a foreign bank account in Canada, and it had less than $10,000, did I consent to anything? I don't have to keep a record of anything. But once that account hit $10,000, now I've consented? Right. How about the government requiring if you take any expenses for travel, reasonable expenses for your work, they require you by regulation to keep receipts or proof of the legitimacy of those expenses? And if I don't, they deny the deduction. Well, you could deny the deductions, and if you make deductions over... If you exaggerate a list like this, you could go to jail for that. It's theoretically possible. Same theoretical possibility you have in your case. If you have the right mens rea, you could go to jail. If you just messed up your tax returns because you're a slob, probably it's not a crime. But if I don't produce the records to show my deductions, I don't produce them. That forces me to say, come forward and show me that you didn't have these deductions, so I can put you in jail. There is a... Yeah, let the record reflect that if I did not have an accountant, I'd be a slob. That's not what I said. Not quite. No further questions. Thank you very much. Thank you to both counsel. And we'll take the matter under advisement.